STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-1648


DAVID JAMES JETT, II

VERSUS

SHAROLETTE BROWN JETT


************

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 49,377
HONORABLE JOHN C. FORD
DISTRICT COURT JUDGE

************

JAMES T. GENOVESE
JUDGE

************

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and James T. Genovese, Judges.


REVERSED AND RENDERED.


Tony C. Tillman
Office of Tony C. Tillman
Post Office Drawer 648
Leesville, Louisiana 71496-0648
(337) 239-7983
COUNSEL FOR PLAINTIFF/APPELLANT:
    Sharolette Brown Jett

**Scott Westerchil**
**Anderson & Westerchil**
**101 South 1st Street**
**Leesville, Louisiana 71446**
**(337) 239-9076**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **David James Jett, II**

**GENOVESE, JUDGE.**

In this action to partition community property belonging to Sharolette Brown Jett (Sharolette), and her former spouse, David James Jett, II (David), Sharolette appeals the trial court's judgment partitioning the parties' community property interest in David's retirement account. For the following reasons, we reverse and render judgment.

## FACTS

David and Sharolette were married on July 1, 1970. A petition for legal separation was filed on February 27, 1990, and a subsequent legal separation was granted thereby terminating the community property regime retroactive to the date of filing therefor. A petition for divorce was filed January 15, 1991, and the parties were divorced on March 22, 1991.

David became employed by the Louisiana State Police (State Police) on May 27, 1979. As of the effective date of the community property partition, David was a Senior Trooper with the State Police. In November of 1995, he attained the rank of Master Trooper, and in May of 1996 he was promoted to the rank of Sergeant. The amount of David's retirement benefit became fixed in January 2001, upon his entering the Deferred Retirement Option Plan (DROP program). Although he continued to work for the State Police, David ceased contributing to the retirement program at the pay level which he had achieved as a Sergeant. Six months later, in July of 2001, David received another promotion to Lieutenant. In January of 2004, David re-entered the retirement program for a period of one year in order to receive his retirement pay at the rank of Lieutenant. He retired as a Lieutenant with the State Police on January 5, 2005.

1

On September 24, 2004, Sharolette filed a petition for partition of community property[1]. Subsequent thereto, the parties reached an amicable community property partition of all property except their retirement accounts. This matter went to trial on August 26, 2005. The record indicates that Sharolette's retirement was not at issue and that the parties agreed that Sharolette was to receive 20.9% of the legally determined retirement funds or benefits received by David from his State Police retirement.

Therefore, in partitioning David's retirement account, the trial court was faced with the sole issue of whether Sharolette had an interest in the **increases** in David's retirement account occurring after the termination date of their former community property regime. The trial court found that David's "promotion to lieutenant was due more to meritorious or personal achievement than an ordinary progression of benefits." The trial court's written reasons concluded that the *Sims* formula[2] was to be applied "to the highest income [David] would have received under the normal course of events, including ordinary promotions and cost increases and gains due to nonpersonal factors." The judgment signed by the trial court on September 25, 2006 ordered that Sharolette "shall receive 20.9% of any funds or benefits, including any cost of living adjustments, that shall become payable by the Louisiana State Police Retirement Fund to [David James Jett, II] at the rank of Master Trooper." It is from this judgment that Sharolette appeals.

---

[1]Since Sharolette was the plaintiff in the petition seeking to partition the community property, for purposes of the present appeal, Sharolette is referred to as "Plaintiff/Appellant."

[2]The Louisiana Supreme Court, in *Sims v. Sims*, 358 So.2d 919 (La.1978), enunciated a formula for the division of retirement accounts which had not yet matured at the time of a community property partition. This became known as the "*Sims* formula."

## ASSIGNMENT OF ERROR

Sharolette's sole assignment of error is set forth as follows:

> The Trial Court erred in deviating from the *Sims* formula, and misapplied the facts of the current case to the three part test established by the Supreme Court in *Hare v. Hodgins*, 586 So.2d 118[] (La. 1991) in that, as a matter of law, the employee spouse did not meet his burden of proving the promotions and increase in income post-divorce were solely attributed to his meritorious efforts and achievements.

In addressing Sharolette's assignment of error, we must determine whether David met his burden of proof under *Hare* that his promotion to the rank of Sergeant and then to Lieutenant with the State Police was due to meritorious or personal achievement as opposed to an ordinary progression of benefits. Sharolette seeks 20.9% of David's retirement at his pay scale as a Lieutenant with the State Police as opposed to the trial court's ruling that she was only entitled to 20.9% of David's retirement at his pay scale as a Master Trooper.

## LAW AND DISCUSSION

A judicial division of a retirement account pursuant to community property partition is generally accomplished by the application of the *Sims* formula which determines what amount of the account is community property, and the resultant percentage due to a former spouse. However, in *Hare*, our supreme court explained that the *Sims* formula is not to be applied in all situations. In *Hare*, the Louisiana Supreme Court opined:

> The general rules for the partition of community property, however, do not address all of the problematic ramifications of classifying, valuating and distributing each spouse's interest in pension benefits which have been earned by one spouse partly during the marriage and partly before or after. In such cases, the pension benefits are composed of the separate property interest of the employee spouse in addition to the community interest. Furthermore, there is no custom from which rules can be derived for each particular situation. Accordingly, in the present case and others a court is bound to proceed

3

and decide equitably to some extent, making resort to justice, reason and prevailing usages.

> . . . .

> Nevertheless, there will be unusual cases in which a substantial part of the increased retirement benefits earned by the employee spouse after divorce will not result from a foundation provided by prior community earnings. In such cases, the partitioning court should select a more equitable method or modify the community or marital fraction rule to attribute that part of the post-divorce increase to the employee spouse separately. Although the emerging jurisprudential precepts are not yet well defined, some factors may be identified as helpful guidelines in determining when such a modification is required.

*Hare*, 586 So.2d at 123-128 (citations omitted).

The supreme court in *Hare* went on to provide the following guidance to the trial court in situations where the application of *Sims* would not be appropriate, stating as follows:

> In general, the partitioning court should inquire as to whether a substantial post-community increase is due to personal effort or achievement after the termination of the community that has little or no relationship with the prior community. The community should not be given credit when a substantial post-community increase to a retirement fund is due to a singular personal factor such as individual effort, education or achievement resulting in a merit raise or an extraordinary promotion or series of promotions. . . . On the other hand, when such an increase results from nonpersonal elements such as longevity raises, cost-of-living raises, forfeitures by terminated employees, and investment returns, the community should participate in that gain.

> . . . .

> When an employee spouse believes that the income he or she will receive on retirement contains a substantial increment ascribable to his or her personal effort or achievement after termination of the community, that spouse may request the court to adjust the community fraction to credit his or her separate property with that increment. Should the trial court agree that the pension was increased due to the employee spouse's personal effort or achievement, benefits may then be reallocated using the highest income the employee spouse would have received under the normal course of events, including ordinary promotions and cost increases and gains due to non-personal factors.

4

*Hare*, 586 So.2d at 128 (citations omitted).

This court has had the occasion to apply *Hare,* and in so doing, noted that "[t]he supreme court in *Hare* established a three-part test for the partitioning court to apply in determining whether or not a substantial post-community increase is due purely to personal merit." *Rivera-Santos v. Rivera-Santos*, 03-667, p. 3 (La.App. 3 Cir. 12/10/01), 862 So.2d 480, 483. "First, the increment must represent a fairly substantial increase in the employee spouse's post-community earnings. Second, the increment must not be due to a non-personal factor, such as cost-of-living raises, etc. Third, the increment must be attributable to the employee spouse's meritorious individual efforts or achievements."[3] *Id.* (quoting *Hare*, 586 So.2d at 128). Finally, the burden of proof is on the employee spouse and "any doubt should be resolved in favor of the community" *Id.* (citing *Hare*, 586 So.2d 118).

"[T]he mere fact of continued employment, without more, is insufficient proof" that increases in a retirement account are the result of a spouse's "personal effort or achievement." *McCown v. McCown,* 93-899, p. 7 (La.App. 3 Cir. 3/2/94), 634 So.2d 1249, 1253. Rather, this court has opined that an increase in earnings that is the result of an employee spouse obtaining "a post-community degree, or transfer within the company to an *unrelated* area of service" are examples of personal achievements warranting deviation from the *Sims* formula. *Id.* at 1252 (emphasis added) (quoting *Moore v. Moore*, 596 So.2d 252, 255 (La.App. 3 Cir.1992)).

In the instant matter, the trial court's written reasons for judgment reflect the following findings:

---

[3]In the case at bar, the parties agree that the first two prongs of the *Hare* test have been met. Therefore, this appeal is concerned solely with the third prong of the test, i.e., whether the incremental increases are attributable to David's "meritorious individual efforts or achievements."

5

Considering the circumstances of this case where the parties had been divorced for [eleven] years, the spouses' job performance and achievements were about equal during the marriage, as after divorce, and the rigorous screening process for promotion to lieutenant, the Court finds it is more probable than not Mr. Jett's promotion to lieutenant was due more to meritorious or personal achievement than an ordinary progression of benefits.

The facts in this case are straightforward, either undisputed or uncontroverted. Sharolette does not dispute the various certifications and promotions obtained by David. Captain Ron Whitaker, a Troop Commander with the State Police, testified about the promotion process of the State Police. He explained that in order for a Master Trooper to advance to Sergeant, he must have a minimum of five years of service. The trooper then takes a test and appears before a promotional panel. The panel considers the trooper's background "to find out what he has done throughout his career" including the types of schools, training, and awards that he has received during his time with the State Police. Similarly, achieving Lieutenant status requires a minimum of two years of service as a Sergeant followed by testing and a selection process. However, Captain Whitaker explained that the only real requirement for qualifying for a promotion with the State Police is length of service and rank of a trooper and a test. The final selection for a promotion is then made considering the trooper's entire career from the time he began with the State Police.

Numerous certificates, which were obtained by David over the course of his employment with the State Police, were introduced as evidence. David acquired a number of certifications *both before and after the divorce*. Additionally, David testified regarding the particular training received by him both before and after the divorce. Although David testified that he was not required to take the courses or training, and that they were taken by him on an elective basis, he acknowledged that

6

annual re-certification is required of all troopers and that there are "updates which everyone is required to attend." Additionally, he "actively sought training throughout [his] career[,]" and his participation did not change after the divorce.

The evidence shows that David completed several continuing training classes covering a variety of employment-related topics. However, a review of the training which David received post-divorce establishes that his efforts were not of such a nature and degree as to constitute a post-community degree, career change, or particular personal achievement by him. Rather, the courses were of limited duration, often forty-hours, and were similar to the courses that he had undertaken prior to the divorce.

Although this court does acknowledge that David obtained promotions, subsequent to the community property termination date, from Master Trooper to Sergeant to Lieutenant, these promotions alone do not constitute meritorious individual efforts or achievement as required by *Hare*. David testified that moving from Senior Trooper to Master Trooper is "simply a function of longevity." Additionally, for purposes of being eligible for a promotion to Sergeant, David explained that qualifying to take the requisite test "is a function of time and grade" and that the final selection process is competitive in nature. Thus, it was simply the passage of time and David's continued certification and employment with the State Police which made him eligible to be promoted to the rank of Lieutenant as opposed to any particular or extracurricular personal effort by him.

The promotions of David from Master Trooper to Sergeant then to Lieutenant were primarily the result of the training and the certificates which he earned over his years of service with the State Police both during and after the divorce. The

7

certificates which he obtained following the divorce are similar to what he had obtained prior to the divorce. The fact that he also took tests and appeared before promotional panels is insufficient to constitute individual meritorious effort or achievement.

For the foregoing reasons, the evidence in the record clearly shows that David "made no major changes in his career activities, he undertook no additional extensive education courses distinct and separate from what he did while he was married, he merely continued the same progression that he embarked on during his marriage" as Sharolette contends. There was no specific event or distinct personal effort to which David can attribute to the subsequent promotions and increase in income. To the contrary, the evidence in the record indicates that it was the cumulative training which David underwent during the years of his employment which qualified him for the promotions as opposed to any extraordinary act. In his words, "it is an accumulative process." Mindful that *Hare* requires that *we must resolve any doubt in favor of the community*, we conclude that David failed to meet the burden of proof required in *Hare* that his increase in pay was due to "a singular personal factor such as individual effort, education or achievement." We find that the trial court erred as a matter of law in its application of *Hare* and in its failure to resolve any doubt in favor of the community.

Therefore, we find that the retirement benefits at issue herein, and specifically the increases via David's promotions up to the rank of Lieutenant, are the community property of the parties in their entirety and are to be divided accordingly. Therefore, David's retirement benefits from the Louisiana State Police Retirement System are to be partitioned in accordance with the *Sims* formula.

## DECREE

For the foregoing reasons, we reverse the judgment of the trial court ordering that Sharolette Brown Jett "shall receive 20.9% of any funds or benefits, including any cost of living adjustments, that shall become payable by the Louisiana State Police Retirement Fund to [David James Jett, II] at the rank of Master Trooper" and render judgment ordering that Sharolette Brown Jett shall receive 20.9% of any funds or benefits, including any cost of living adjustments, that shall become payable by the Louisiana State Police Retirement Fund to David James Jett, II at the rank of Lieutenant.

Costs of this appeal are assessed against David James Jett, II.

**REVERSED AND RENDERED.**